Davis, C. J.
The contention that the election of the probate judge was without regard to and separable from, his term of office, cannot be maintained. The electors may not have consciously considered the term of office for which one of the candidates should be chosen; but it is conceivable that many of them may have done so and that the term of office might have some influence in the choice among candidates. It is also true that the conditions with which the constitution and the laws surround an office are necessarily contemplated in the act of choosing or appointing the officer. And such, it seems to us, is *326 the result of former decisions of this court and of a close reading of the constitution itself. Sections 2 and 6 of article 4 of the constitution prescribe that the judges of the supreme court and of the circuit court “shall be elected for such term,” etc.; and in section 13 of article 4 it is provided that “In case the office of any judge shall become vacant before the expiration of the regular term for which he was elected,” etc. Hence the electoral act of choosing between candidates is by the constitution coupled with the choice of the officer for the constitutional term. In State v. Cogswell, 8 Ohio St., 620, where a vacancy occurred in the office of the probate judge of Pickaway county more than thirty days before the next annual election at which a probate judge for the constitutional term was to be chosen, and the sheriff in his proclamation giving notice of said election failed to give notice that a probate judge would be chosen to fill the unexpired term but merely gave notice that one probate judge for said county would be chosen, without more, and the voters cast their ballots for probate judge without indicating whether for the unexpired term or for the constitutional term, it was held that the judge thus elected must by reasonable intendment be held to have been elected for' the full and not for the unexpired term. And the court said in the opinion that “The term of three years as the duration of a probate judge’s .office is the general rule under the constitution, terms to fill vacancies the exception. The office of probate judge, when announced in the call for an election, or inscribed upon the ballot of the elector, without limit or qualification, prima facie, at least, imports a term of three years; and such, in our judgment, was the character, and duration of the office which, *327 under the averments of the answer, the defendant was elected to fill.” Similar views were expressed by this court in the following cases: State v. Chase, Governor, 7 Ohio St., 372; State v. Taylor, 15 Ohio St., 137; State ex rel. v. Handy, 51 Ohio St., 204; and State v. Neibling, 6 Ohio St., 40. It therefore appears that in legal contemplation the choosing an officer at an election, duly proclaimed, is a choosing for the constitutional or statutory term of the office, as the case may be. This view seems to be recognized by the amendment which is now under consideration; for in the third section it provides that every elective officer holding office when this amendment is adopted, shall continue to hold such office for “the full term for which he ivas elected
When the relator was elected, on the seventh day of November, 1905, he was elected for the term of three years beginning February 9, 1906, because his former term of office will extend to that date and because the amendment under which he now claims a term of four years was not yet in force when the proclamation for such election was made, nor whén the election occurred. Indeed the electors could not have known that the amendment would be adopted. Whatever view may be the correct one as to the time when the amendment became operative, it is certain that it was not in force until after the election on the seventh day of November was closed; and it is equally certain that such election was not held under or with reference to this amendment to the constitution. Unless a retroactive effect be given to the amendment it could not in any respect qualify the term for-which the relator had been chosen.
It is a familiar rule of constitutional interpretation that a constitutional provision must be construed *328 prospectively unless the language of the constitution is so clear and distinct as. to require a different construction. We do not think that the language of this amendment requires, or even suggests, a retrospective operation. Since the term of office of any electivé officer is read into the act of the electors in choosing him and is inseparable from that act, it follows that the terms of office defined in section 2 of this amendment, now designated as article 17 of the constitution, were intended to go into effect as to officers elected as provided in section 1; and section 2 can be applied to no other officers unless it be plainly so provided. There were only two classes of officers, not elected under the provisions of the amendment, to be provided for. One class was made up of the elective officers who were in possession of their offices and actually serving when the amendment should be adopted and it was provided in section 3 that every officer in that class should continue, in office for the full term for which he was elected, and until his successor should be elected and qualified as provided by law. The other class, including the relator, is composed of those who were chosen .under and by virtue of the constitution as it existed before the amendment but whose terms of office, although defined by the constitution, had not yet begun when the amendment was adopted. This class is provided for in section 2 of the amendment as follows: “And the general assembly shall have power to so extend existing terms of office as to effect the purpose of section 1 of this article.” The phrase “existing terms of office?’ means the terms of office as defined in the constitution and the acts of the general assembly as existing at the time of the proposal and adoption of the amendment. It could not refer only *329 to the terms of those actually holding office at the time of the adoption of the amendment. Those were provided for by section 3 of the amendment. Nor could it apply to such as might be elected in accordance with section 1 of the amendment; for as to such officers the provisions of section 2 of the amendment were clearly intended to be self-executing: that is, when biennial elections shall be had, as provided in section 1, the provisions of section 2 will work out in harmony with section 1. It is not apparent that any necessity would ever arise for the extension of terms of office provided for in the amendment and therefore no power is conferred on the general assembly to extend such terms. The word ‘‘existing” is referable only to the time of the adoption of the amendment. . Hence we reach the conclusion that the general assembly is not empowered to extend terms defined by or created under the amendment which is now designated as article 17 of the constitution; but that such power is confined to such officers as weré already elected at the time when the amendment became effective.
By no fair construction have we been able to discover any retroactive operation of this amendment. It does not attempt to abolish or in any manner restrict existing terms of office; but on the contrary the manifest intention is to continue them unto the end and, if necessary to fit into the new order of elections, to extend them. We are not construing a new constitution. We are construing an amendment to the constitution, which displaces the constitution only so far as it expressly abrogates, or is irreconcilably in conflict with, former provisions. In the view which most commends itself to our judgment, section 7 of article 4 of the constitution remains *330 wholly operative as to the terms of officers elected at and before the adoption of article 17, with the added provision, as defined above, for the extension of existing terms so as to effect the purpose of section 1 of article 17; and that the three year clause of section 7, article 4, is abrogated only as to such officers as shall be hereafter elected as provided in the amendment now known as article 17.
This construction appears to us to harmonize section. 7 of article 4 with the intent and purpose of the amendment; for, giving the relator the term of three years, from February 8, 1906, when his present term will expire, would bring around the election of his successor in the year 1908, without necessity for extension of the term “so as to effect the purpose of section 1” of the amendment; and thereafter the election for the regular term would occur every fourth year in even years. But if the relator should be commissioned for a term of four years the election of his successor would fall in 1909, which would require an extension of the term so as to bring the election in an even year.
When the purpose of section 1 of the amendment can be easily and naturally effected without the intervention of the general assembly, we cannot presume that it was the intention to create a necessity for an abnormal term in order to accomplish the same end.
The allegation in the petition that the deputy supervisors of elections made and delivered to the relator a certificate of his election for the term of four years, adds nothing to the case. It was the duty of those officers to certify the relator’s election and there the authority conferred by statute ends; and when such certificate has been filed with the secretary *331 of state, accompanied with, the fee required by law, it is made the duty of the governor to issue “the proper commission.” The governor and secretary of state properly refused to make out and deliver to the relator a commission for the office of probate judge for the term of four years.
Demurrer sustained and petition dismissed.
Shauck, Price, Crew and Summers, JJ., concur.